## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

SAMUEL ORTIZ LOPEZ,

               Plaintiff,

v.

REALPAGE, INC. a/k/a
LEASINGDESK SCREENING

             Defendant.

Case No.:

**JURY TRIAL DEMANDED**

## COMPLAINT

Samuel Ortiz Lopez ("Plaintiff"), by and through his counsel, brings the following Complaint against RealPage, Inc. a/k/a LeasingDesk Screening ("Defendant" or "RealPage") for violations of the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§1681, *et seq.*, arising out of <u>two</u> tenant screening reports that Defendant published to Plaintiff's landlord and a prospective landlord, which falsely portrayed Plaintiff as a convicted criminal, a previously evicted tenant and a judgment debtor in relation to the evictions.

## INTRODUCTION

1.    This is an individual action for damages, costs, and attorney's fees brought against Defendant pursuant to the Fair Credit Reporting Act, 15 U.S.C. §§1681, *et seq.* ("FCRA").

2.     Defendant is a consumer reporting agency ("CRA") that compiles and maintains files on consumers on a nationwide basis. It sells consumer reports, also known as tenant screening reports, generated from its database and furnishes these tenant screening reports to mortgage brokers, landlords, and property management companies who use the reports to make decisions regarding prospective borrowers and tenants.

3.     Defendant assembled and published two inaccurate tenant screening report to Plaintiff's landlord and a prospective landlord, which included an assault conviction and two evictions in a second report that alleged Plaintiff owed $17,000.

4.     In fact, Plaintiff has never been convicted of assault, or any other misdemeanor or felonies in his life and was not subjected to two evictions that resulted in Plaintiff owing $17,000.00.

5.     Plaintiff's landlord and a prospective landlord both denied Plaintiff's housing applications after receiving tenant screening reports from Defendant, in which Defendant published the inaccurate assault conviction and two evictions indicating Plaintiff owed $17,000.

6.     Defendant's inaccurate reporting could have easily been avoided had Defendant performed a cursory review of the widely available underlying public court records from Orange County, Florida regarding the assault conviction and two evictions prior to publishing the information to Plaintiff's landlord.

*Ortiz Lopez v. RealPage, Inc.*
Complaint

7.      Had Defendant performed even a cursory review of the underlying public court records, it would have discovered that Plaintiff's conviction for assault was dismissed and alleged evictions do not appear on the court's online records.

8.      Defendant does not employ reasonable procedures to assure the maximum possible accuracy of the information it reports regarding consumers. Defendant's failure to employ reasonable procedures resulted in Plaintiff's report being grossly inaccurate.

9.      Defendant committed these violations pursuant to its standard policies and practices, which harm innocent consumers seeking housing by prejudicing their prospective landlords with inaccurate information.

10.      Defendant's inaccurate report led Plaintiff to refuse and delay good housing opportunities to rent an apartment unit that was suitably accommodating to his needs, causing him physical injury as a result of emotional distress, embarrassment, inconvenience, anxiety, fear of homelessness, and financial loss.

11.      As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, determination to refuse and delay good housing opportunities; loss of time trying to correct the tenant screening report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress,

including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

12.    As a result of Defendant's conduct, action, and inaction, Plaintiff brings claims against Defendant for failing to follow reasonable procedures to assure maximum possible accuracy based on 15 U.S.C. § 1681e(b) of the FCRA and for failing to conduct a reasonable reinvestigation to determine whether the information Plaintiff disputed was inaccurate and for failing to delete the disputed information from the tenant screening report, in violation of the FCRA, 15 U.S.C. § 1681i.

## **PARTIES**

13.    Samuel Ortiz Lopez ("Plaintiff" or "Mr. Ortiz Lopez") is a natural person residing in Orlando, Florida, and is a "consumer" as that term is defined in 15 U.S.C. §1681a(c).

14.    Defendant RealPage, Inc. a/k/a LeasingDesk Screening ("Defendant" or "RealPage") is a Delaware corporation doing business throughout the United States, including the State of Florida and in this District, and has a principal place of business located at 2201 Lakeside Boulevard, Richardson, Texas 75082.

15.    RealPage may be served through its registered agent in Florida, C T Corporation System located at 1200 South Pine Island Road, Plantation, FL 33324.

16.    Among other things, Defendant sells consumer reports, often called tenant screening reports, to mortgage brokers, property management companies, and landlords for their use in deciding whether to rent or otherwise offer housing to a

prospective tenant. These reports are provided in connection with a business transaction initiated by the consumer.

17.     Defendant is a consumer reporting agency as defined in 15 U.S.C. §1681a(f) because for monetary fees, it regularly engages in the practice of evaluating and/or assembling information on consumers for the purpose of furnishing consumer reports for tenant screening purposes to third parties, and uses interstate commerce, including the Internet, for the purpose of preparing and furnishing such consumer reports.

## JURISDICTION AND VENUE

18.     This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §1331 and 15 U.S.C. §1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

19.     Venue is proper in this District pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## STATUTORY BACKGROUND

20.     Enacted in 1970, the FCRA's passage was driven in part by two related concerns: first, that consumer reports were playing a central role in people's lives at crucial moments, such as when they applied for a job or credit, and when they applied for housing. Second, despite their importance, consumer reports were

unregulated and had widespread errors and inaccuracies.

21.    While recognizing that consumer reports play an important role in the economy, Congress wanted consumer reports to be "fair and equitable to the consumer" and to ensure "the confidentiality, accuracy, relevancy, and proper utilization" of consumer reports. 15 U.S.C. §1681.

22.    Congress, concerned about inaccuracies in consumer reports, specifically required consumer reporting agencies to follow "reasonable procedures to assure maximum possible accuracy" in consumer reports. 15 U.S.C. §1681e(b).

23.    Consumer reports that contain factually incorrect information which does not belong to the consumer at issue are neither maximally accurate nor fair to the consumers who are the subjects of such reports.

### THE FCRA'S PROTECTIONS FOR HOUSING APPLICANTS

24.    Despite its name, the Fair Credit Reporting Act covers more than just credit reporting, it also regulates tenant screening reports like the one Defendant prepared in Plaintiff's name.

25.    The FCRA provides a number of protections for housing applicants who are the subject of tenant screening reports for the purpose of securing housing and credit.

26.    In the parlance of the FCRA, tenant screening reports are "consumer reports," and providers of tenant screening reports, like Defendant, are "consumer

reporting agencies." 15 U.S.C. §§1681a(d) and (f).

27.     The FCRA imposes duties on consumer reporting agencies to assure that consumer reports are accurate and that "consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. §1681.

28.     Under 15 U.S.C. §1681e(b), consumer reporting agencies are required "to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

29.     Defendant disregarded its duties under the FCRA with respect to Plaintiff's tenant screening report.

### DEFENDANT'S ILLEGAL BUSINESS PRACTICES

30.     Over the past 15 years, there has been increased collection and aggregation of consumer data, including criminal records and sex offender registration data and eviction and civil judgment records. As a result of the increasing availability of this data, there has been a boom in the tenant screening industry.

31.     Tenant Screening Reports are generally created by running automated searches through giant databases of aggregated criminal record data and eviction records. The reports are created and disseminated with little to no manual, in-person review, and the underlying court records are rarely directly reviewed in creating

tenant screening reports.

32.     Tenant Screening companies, like Defendant, collect millions of records from a number of sources with data from county, state, and federal level sources. The data included on the reports is often not obtained directly from court records on an individual basis but instead is purchased in bulk or scraped from court websites.

33.     Given that Defendant is in the business of selling tenant screening reports, Defendant should be well aware of the FCRA and the attendant harm to consumers for reporting inaccurate or outdated information.

34.     Defendant places its business interests above the rights of consumers and reports such inaccurate information because it is cheaper for Defendant to produce reports containing information that is inaccurate and incomplete than it is for Defendant to exert proper quality control over the reports prior to their being provided to Defendant's customers.

35.     Defendant reports such erroneous and incomplete information because it wants to maximize the automation of its report creation process, thereby saving the costs associated with conducting the additional review necessary to remove the inaccurate or out-of-date entries.

36.     Defendant charges its customers the same price for reports that are grossly inaccurate as it does for accurate reports.

37. Appropriate quality control review of Plaintiff's report would have made clear that Defendant was reporting a misdemeanor as a felony.

38. As a provider of tenant screening reports, Defendant should be aware of the FCRA requirements and is likely a member of the Professional Background Screening Association ("PBSA"). PBSA hosts a conference at least once a year where presenters discuss compliance with federal and state consumer reporting laws.

## FACTS

### Plaintiff Applies for an Apartment with Sunset Place Apartments

39. In or about October 2022, Plaintiff moved into Sunset Place Apartments ("Sunset Place"). Plaintiff was renting a three-bedroom apartment at the apartment building and paying $2,100 in rent.

40. Plaintiff's lease with Sunset Place ended on November 10, 2023, and required that Plaintiff give a 60-day notice if he intended to renew the lease. Plaintiff gave the Sunset Place representative proper notice of his interest in renewing the lease.

41. Plaintiff was looking to downsize and informed Sunset Place representative that Plaintiff wanted to move into a two-bedroom apartment.

42. Sunset Place offered Plaintiff a new lease for a newly renovated two-bedroom apartment for $1,603. The lease offer was conditioned upon Plaintiff paying an application fee of $275 and passing a background check ("tenant screening

report"), to lock in that apartment at that price.

43.     Plaintiff applied in-person and paid an application fee of $275.

**Defendant Published an Inaccurate Tenant Screening Report to Sunset Place**

44.     Sunset Place contracted with Defendant to conduct tenant screening reports on prospective tenants to determine whether the applicant is eligible to rent an apartment.

45.     In September 2023, Sunset Place ordered a tenant screening report on Plaintiff from Defendant.

46.     On or about September 21, 2023, pursuant to its policies and procedures, Defendant sold a tenant screening report about Plaintiff to Sunset Place.

47.     Therein, Defendant published information including a compilation of Plaintiff's criminal history.

48.     Defendant published inaccurate information about Plaintiff.

49.     Specifically, Defendant's tenant screening report about Plaintiff included a grossly inaccurate and stigmatizing assault conviction (Case No. 2022MM004475AO) from Orange County, Florida ("Criminal Record at Issue").

50.     The Criminal Record at Issue appeared in the tenant screening report as follows:

**Criminal & Other Records**

Run date 9/21/2023
Offender information

| ID | Jur code | Name | Birth date | SSN | Photo/Description |
|----|----------|------|-----------|-----|-------------------|
| 1 | FLCTYORANGE | ORTIZLOPEZ, SAMUEL | 4/6/xxxx | | SEX: m RACE_ETHNIC: white |

*Ortiz Lopez v. RealPage, Inc.*
Complaint

| ID | Jur code | Disposition | Type/Level | Charge | Record Date | ORIC/ County | Note |
|---|---|---|---|---|---|---|---|
| 1 | FLCTYORANGE | | | ASSAULT (ASSAULT) | 07/05/2022 | ORLANDO POLICE DEPARTMENT \| Case#2022MM004475AO | |

51.   The conviction reported by Defendant about Plaintiff is inaccurate because the charges were dismissed with the filing of a No Information Notice back on September 1, 2022.

52.   Plaintiff has never been convicted of assault, or any other misdemeanor or felonies in his life.

53.   A cursory review of the widely available underlying public court records confirms that Plaintiff never pled guilty to or was convicted of assault. Rather, the public record confirms that the Criminal Record at Issue was dismissed on September 1, 2022.

54.   The sole reason the inaccurate conviction was reported was that Defendant failed to follow reasonable procedures to assure the maximum possible accuracy of the information it published within the tenant screening report it sold about Plaintiff to Plaintiff's landlord.

55.   Had Defendant followed reasonable procedures, it would have discovered that Plaintiff has never been convicted of assault, that the charges had been dismissed over a year before, and that it should not have reported the same.

56.   In preparing and selling a consumer report about Plaintiff, wherein Defendant published to Plaintiff's landlord inaccurate information about Plaintiff,

Defendant failed to follow reasonable procedures to assure that the report was as accurate as maximally possible, in violation of 15 U.S.C. §1681e(b).

### Sunset Place Denies Plaintiff's Lease Application

57.    On or about September 22, 2023, Plaintiff was notified by Sunset Place that as a direct result of criminal conviction reported by Defendant, Plaintiff would be unable to both renew his lease and lease the Two bed-room apartment.

58.    Plaintiff called Sunset Place and explained that he has no convictions because those charges had been made by the aggressor and that the prosecutor would not prosecute Plaintiff.

59.    Plaintiff further explained that he had recently undergone a background search in order to work at the Orlando airport, and that that report came back clear.

60.    Plaintiff was very panicked, confused, and concerned about the impact of the inaccurate reporting of his criminal records, in relation to the Sunset Place, but also the impact of the same on his future.

61.    Defendant's inaccurate report had not only prevented Plaintiff from downsizing but had effectively evicted Plaintiff because Sunset Place declined to renew his then current lease.

62.    Defendant reported an assault conviction, when Plaintiff was never convicted and whose charges had been swiftly dismissed. The underlying public court record information was widely available to Defendant —online no less— prior

*Ortiz Lopez v. RealPage, Inc.*
Complaint

to publishing Plaintiff's tenant screening report to Sunset Place, but Defendant failed to perform even a cursory review of such information.

### Plaintiff Disputed the Misinformation in Defendant's Tenant Screening Report

63.    On or about September 21, 2023, desperate to retain his housing at Sunset Place and riddled with worry over being homeless in a matter of day, as well as far-reaching impacts of the inaccurate information, Plaintiff disputed the inaccurate information with Defendant.

64.    Plaintiff disputed with Defendant using Defendant's Docusign form.

65.    Plaintiff identified himself and the inaccurate records.

66.    Plaintiff stated that the conviction was not his and that he had recently successfully undergone a background check by the U.S. government.

67.    Plaintiff specifically disputed the inaccurate report of an **assault conviction**.

68.    Plaintiff specifically asked Defendant to investigate and correct its reporting in any tenant screening report about Plaintiff.

69.    On or about September 22, 2023, Plaintiff requested a copy of his tenant screening report from Defendant.

70.    On or about September 26, 2023, Plaintiff obtained a copy of the tenant screening report and was shocked and humiliated upon reviewing the assault conviction contained within the tenant screening report.

71.     On September 28, 2023, Plaintiff received Defendant's correspondence confirming that it had reinvestigated Plaintiff's dispute, conceded the reporting was inaccurate.

72.     Defendant's September 28 letter included a copy of Plaintiff's corrected tenant screening report, wherein Defendant had removed the criminal case altogether and reporting no criminal records at all.

73.     Upon information and belief, Defendant issued a corrected tenant screening report to Sunset Place.

74.     After receiving the response from Defendant, Plaintiff contacted Sunset Place regarding the tenant screening report at issue.

75.     Sunset Place representative informed Plaintiff that they were still on hold and could not renew Plaintiff's lease.

76.     Plaintiff wanted to renew his lease because he liked his apartment building and because Plaintiff wanted to save the move-in costs of around $3,700 (according to the couple of quotes Plaintiff got) he would incur moving to a new place.

77.     Plaintiff reasonably believes that due to Defendant's inaccurate reporting in the first instance, Sunset Place formed a negative opinion about Plaintiff and would not renew his lease or lease any other unit to Plaintiff.

78.     Upon information and belief, after the inaccurate reporting, people at

*Ortiz Lopez v. RealPage, Inc.*
Complaint

the Sunset Place apartment building were looking at Plaintiff differently, believing Plaintiff were a convicted criminal.

79.     Accordingly, Defendant's false report led Sunset Place to refuse a housing opportunity that met Plaintiff's needs, such as, affordability, safety, no need to spend many to move-in to another building, and proximity to work, and friends.

80.     Plaintiff was extremely distressed because Defendant's inaccurate report forced Plaintiff to prepare to leave his apartment and find suitable housing in a matter of days.

81.     Plaintiff was further worried that about the costs and time associated with moving to a new apartment.

82.     These additional costs forced Plaintiff to work 11 hours a day to move out.

83.     Not only did Plaintiff to increase his hours of work, but he also was forced to look for a new apartment with the little free time he had.

**Plaintiff Applies for an Apartment with Harper Grand Apartment Homes**

84.     On or about September 28, 2023, after Defendant had corrected the tenant screening report Defendant sold Sunset Place, Plaintiff applied to rent an apartment with Harper Grand Apartment Homes ("Harper Grand").

85.     Sunset Place offered Plaintiff a two-bedroom apartment for $1,610 that had recently become available. The lease offer was conditioned upon Plaintiff

*Ortiz Lopez v. RealPage, Inc.*
Complaint

paying an application fee of $50 and a holding deposit of $100, as well as a satisfactory tenant screening report.

86.    Plaintiff submitted his application and made the required payments.

**Defendant Published a Second Inaccurate
Tenant Screening Report to Harper Grand**

87.    Harper Grand contracted with Defendant to conduct tenant screening reports on prospective tenants to determine whether the applicant is eligible to rent an apartment.

88.    On or about September 28, 2023, Harper Grand ordered a tenant screening report on Plaintiff from Defendant.

89.    On or about October 2, 2023, pursuant to its policies and procedures, Defendant sold a tenant screening report about Plaintiff to Harper Grand.

90.    Therein, Defendant again published the Criminal Record at Issue.

91.    The Criminal Record at Issue appeared twice in the second tenant screening report.

92.    The first time it appeared, the Criminal Record at Issue reported with disposition "NO INFORMATION NOTICE".

93.    The information is inaccurate because the disposition reported is objectively misleading.

94.    A reasonable user of the second tenant screening report would interpret the report as Defendant having "no information" on the disposition of the case.

95.     The second tenant screening report contained no statements explaining what a "no information notice" means or otherwise correcting the most reasonable interpretation: that Defendant had no information on the disposition of the case.

96.     Instead, the Criminal Record at Issue should have reported with a disposition of "dismissed" or "terminated", or any other phrasing explaining to a reasonable user of the tenant screening report that the prosecutor declined to prosecute.

97.     A reasonable user of the tenant report would not understand the meaning of "no information notice" identified under the disposition of a criminal case.

98.     Defendant's reporting was also inaccurate because Defendant had already removed the criminal case altogether, in response to Plaintiff's dispute related to the previous application he submitted with Sunset Place.

99.     The second tenant screening report should have omitted the case altogether, as Defendant did when it "corrected" the report sold to Sunset Place.

100.   Defendant had expressly acknowledged that its reporting of the Criminal Record at Issue was inaccurate and had previously deleted the record altogether.

101.   Defendant's correction of the tenant screening report sold to Sunset Place reasonably led Plaintiff to believe that Defendant would continue to report the

same information.

102.   The second time the Criminal Record at Issue appeared on the second tenant screening report was further inaccurate. The record appeared as follows:

Run date 9/30/2023
Offender information

| ID | Jur code | Name | Birth date | SSN | Photo/Description |
|----|----------|------|-----------|-----|-------------------|
| 1 | FLCTYORANGE | ORTIZ/LOPEZ, SAMUEL | 4/5/xx/xx | | SEX: m RACE_ETHNIC: white |

Offense information - ID column indicates association between offender and offense

| ID | Jur code | Disposition | Type/Level | Charge | Record Date | ORIG/County | Note |
|----|----------|-------------|-----------|--------|-------------|-------------|------|
| 1 | FLCTYORANGE | | | ASSAULT (ASSAULT) | 07/05/2022 | ORLANDO POLICE DEPARTMENT ) Case#2022MM004475AO | |

103.   This reporting is identical to the reporting on the tenant screening report previously sold to Sunset Place.

104.   This reporting is grossly inaccurate because it fails to state that the charges had been effectively dismissed.

105.   Defendant knew that not reporting the charges as dismissed was inaccurate, as Defendant expressly acknowledged when investigating Plaintiff's dispute only days prior.

106.   In addition to reporting the inaccurate Criminal Record at Issue, Defendant inaccurately reported two evictions and a rental account balance of $17,000.00. The evictions were a result of an error on the part of Plaintiff's previous landlord.

107.   Plaintiff was receiving rent assistance from the government under the OURFlorida program, which was paying his rent directly to his landlord. The

landlord failed to accurately apply the payments to his account.

108.   The sole reason the inaccurate disposition and two evictions were reported was that Defendant failed to follow reasonable procedures to assure the maximum possible accuracy of the information it published within the tenant screening report it sold about Plaintiff to Plaintiff's landlord.

109.   Had Defendant followed reasonable procedures, it would have been consistent with its prior report and not included the Criminal Record at Issue at all and would not have included the two evictions.

110.   In preparing and selling a consumer report about Plaintiff, wherein Defendant published to Plaintiff's landlord inaccurate information about Plaintiff, Defendant failed to follow reasonable procedures to assure that the report was as accurate as maximally possible, in violation of 15 U.S.C. §1681e(b).

111.   Defendant's inclusion of inaccurate information on the tenant screening report it sold to Harper Grand was made knowingly and/or recklessly, and thus Defendant willfully violated the FCRA, making defendant liable to Plaintiff under 15 U.S.C. §1681n.

**Harper Grand Denies Plaintiff's Lease Application**

112.   On or about October 5, 2023, Plaintiff was notified by Harper Grand that as a direct result of a tenant screening report by Defendant, Harper Grand denied Plaintiff's application.

113.   Plaintiff was extremely shocked that Defendant continued to report inaccurate information to potential landlords even when it had previously acknowledged that its report was inaccurate and had corrected them, by deleting the criminal case altogether.

114.   Defendant's inaccurate reporting had caused another landlord to deny Plaintiff's application and leaving Plaintiff only a week to find new housing or become homeless.

115.   Defendant failed to follow reasonable procedures which in this case required that previously corrected information would continue to report as shown on corrected reports, or at least would not be reinserted and report inaccurately.

116.   Accordingly, Defendant's second tenant screening report led Harper Grand to refuse a housing opportunity that met Plaintiff's needs, such as, affordability, safety, and proximity to work, and friends, but most importantly immediacy.

### Plaintiff Disputed the Misinformation in Defendant's Tenant Screening Report to Harper Grand

117.   On or about November 22, 2023, desperate to secure housing with Harper Grand and riddled with worry over being homeless in a matter of days, as well as far-reaching impacts of the inaccurate information, Plaintiff disputed the inaccurate information with Defendant.

118.   Plaintiff identified himself and the inaccurate records.

119.    Plaintiff stated that the conviction was reported wrong and that the case was dismissed. Plaintiff further explained that the two eviction matters and rental account balance of $17,000 were also reported in error because the rent was paid directly to his landlord as a part of Florida's rent assistance OURFlorida program.

120.    Plaintiff specifically disputed the inaccurate report of an **assault conviction, the two evictions and the rental account balance of $17,000.**

121.    Plaintiff specifically asked Defendant to investigate and correct its reporting in any tenant screening report about Plaintiff.

122.    On December 13, 2023, Plaintiff received Defendant's correspondence confirming that it had reinvestigated Plaintiff's dispute and confirmed that the disputed information was accurate.

123.    Accordingly, Defendant's false report led Harper Grand to refuse a housing opportunity that met Plaintiff's needs, such as, affordability, safety, and proximity to work, and friends.

124.    Plaintiff was extremely distressed because Defendant's inaccurate report had Plaintiff preparing to leave his apartment and was uncertain whether he was going to be able to find suitable housing or, alternatively, become homeless while he looked for a new apartment complex that did not use Defendant for their tenant screening.

//

125.    On or about December 15, 2023, Plaintiff was able to provide Sunset Place with the required documentation to satisfy the tenant screening processes.

126.    Despite Defendant's errors, Plaintiff was able to secure housing with Sunset Place and downsize as he originally intended to do.

127.    The injuries suffered by Plaintiff as a direct result of Defendant's erroneous reporting are the type of injuries that the FCRA was enacted to address.

128.    Under common law, Defendant's conduct would have given rise to causes of action based on defamation and invasion of privacy.

129.    As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, a delay in housing opportunities, a loss of housing opportunities; loss of time and money trying to correct the tenant screening report; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

## CLAIMS FOR RELIEF
### COUNT I
### 15 U.S.C. §1681e(b)
### Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy

130.    Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs 1 to 129 as if fully stated herein.

131.    Defendant is a "consumer reporting agency" as defined by 15 U.S.C.

*Ortiz Lopez v. RealPage, Inc.*
Complaint

§1681a(f).

132.   At all times pertinent hereto, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. §1681a(c).

133.   At all times pertinent hereto, the above-mentioned tenant screening report was a "consumer report" as that term is defined by 15 U.S.C. §1681a(d).

134.   Defendant violated 15 U.S.C. §1681e(b) by failing to establish or to "follow reasonable procedures to assure maximum possible accuracy" in the preparation of the tenant screening reports it sold about Plaintiff as well as the information it published within those reports.

135.   As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of housing opportunities; loss of time and money trying to correct the tenant screening report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

136.   Defendant willfully violated 15 U.S.C. §1681e(b) in that its conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n. Alternatively, Defendant was negligent, entitling Plaintiff to

recover under 15 U.S.C. §1681*o*.

137.    Plaintiff is entitled to recover statutory damages, punitive damages, and reasonable attorneys' fees and costs from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n and/or §1681*o*.

**COUNT II**
**15 U.S.C. §1681i**
**Failure to Reasonable Investigate**

138.    Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs 1 to 137 as if fully stated herein.

139.    Defendant is a "consumer reporting agency" as defined by 15 U.S.C. §1681a(f).

140.    At all times pertinent hereto, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. §1681a(c).

141.    At all times pertinent hereto, the above-mentioned tenant screening report was a "consumer report" as that term is defined by 15 U.S.C. §1681a(d).

142.    The FCRA mandates that a CRA conduct an investigation of the accuracy of information "[I]f the completeness or accuracy of any item of information contained in a consumer's file" is disputed by the consumer. §1681i(a)(1).

143.    The FCRA imposes a 30-day limitation for the completion of such an investigation. *Id*.

144.    The FCRA provides that if a CRA conducts an investigation of disputed information and confirms that the information is in fact inaccurate or is unable to verify the accuracy of the disputed information, the CRA is required to delete that item of information from the consumer's file. §1681i(a)(5)(A).

145.    Throughout the five years preceding the filing of this Complaint, Plaintiff disputed the reporting of inaccurate information by Defendant and requested that Defendant correct and/or delete a specific item in Plaintiff's file that is inaccurate.

146.    In response to Plaintiff's dispute following the tenant screening report Defendant sold Sunset Place, Defendant acknowledged its reporting was inaccurate and deleted the Criminal Record at Issue from Plaintiff's file altogether.

147.    Thereafter, Defendant sold a second tenant screening report to Harper Grand that again included the Criminal Record at Issue inaccurately in violation of §1681i(a)(5)(B).

148.    Additionally, Defendant inaccurately reported two eviction and judgment records.

149.    Plaintiff expended resources in the form of time and money to repeatedly dispute the inaccurate reporting by Defendant.

150.    Defendant violated §1681i by failing to conduct a reasonable investigation to determine whether the disputed information was inaccurate and

record the current status of the disputed information, or delete the disputed information, before the end of the 30-day period beginning on the date on which they received the notices of dispute from Plaintiff; and by failing to maintain reasonable procedures with which to filter and verify disputed information in Plaintiff's file.

151. As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of housing opportunities; loss of time and money trying to correct the tenant screening report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

152. Defendant willfully violated 15 U.S.C. §1681i in that its conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n. Alternatively, Defendant was negligent, entitling Plaintiff to recover under 15 U.S.C. §1681*o*.

153. Plaintiff is entitled to recover statutory damages, punitive damages, and reasonable attorneys' fees and costs from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n and/or §1681*o*.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for the following relief:

i.  Determining that Defendant negligently and/or willfully violated the FCRA;

ii.  Awarding Plaintiff actual, statutory, and punitive damages as provided by the FCRA;

iii.  Awarding Plaintiff reasonable attorneys' fees and costs as provided by the FCRA; and,

iv.  Granting further relief, in law or equity, as this Court may deem appropriate and just.

## **DEMAND FOR JURY TRIAL**

Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

RESPECTFULLY SUBMITTED, January 8, 2024.

> */s/ Catherine Tillman*
> Catherine Tillman, Esq., FL #0057663
> **CONSUMER ATTORNEYS**
> 8245 N. 85th Way
> Scottsdale, AZ 85258
> T : (941) 263-7310
> F: (718) 715-1750
> E: ctillman@consumerattorneys.com
>
> *Attorney for Plaintiff*
> *Samuel Ortiz Lopez*

*Ortiz Lopez v. RealPage, Inc.*
Complaint